UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 05-35-JBC**

**JAMES C. HENDERSON,**                                                     **PLAINTIFF,**

**V.**             **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                           **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

      The claimant, James Henderson, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner. The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion for summary judgment and grant the Commissioner's motion for summary judgment.

**A.**     **Overview of the Process**

      Judicial review of the ALJ's decision is limited to determining whether he employed the proper legal standards. *Cutlip v. Sec'y of Health and Human Serv.*, 25 F.3d 284, 286 (6th Cir. 1994). "This court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, if substantial evidence supports the Commissioner's decision, this court will defer to that finding, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is performing substantial gainful activity; at Step 2 the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can perform his past relevant work; and, finally, at Step 5–the step at which the burden of proof shifts to the Commissioner–the ALJ determines, once it is established that the claimant cannot perform his past relevant work, whether significant numbers of other jobs exist in the national economy which he can perform. *See Preslar v. Sec'y of Health & Human Serv.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

In the first step of the evaluation, the ALJ determined that the claimant had not engaged in any substantially gainful activity since the alleged onset of his medical conditions. At the second and third steps of the evaluation, the ALJ

determined that the claimant "is status post compressions fractures of the spine," which is considered severe within the meaning of the Regulations, 20 C.F.R. §§ 404.1520(c); 416.920(b). However, this condition did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation 4. During this analysis, the ALJ did not find that the claimant suffered from any mental impairments that could be considered severe. At step four, the ALJ determined that the claimant could not perform any of his past relevant work. However, the ALJ found that the claimant had the residual functional capacity ("RFC") to "perform the full range of light work" within the meaning of 20 C.F.R. §§ 404.1567; 416.967. Continuing to step 5, based on findings about the claimant's ability to perform a full range of light work, the ALJ determined that there was a significant number of jobs in the national economy that she could perform. Therefore, the claimant was not under a disability as defined in the Social Security Act.

**C.     Analysis**

The claimant argues that the ALJ erred in failing to find that he suffers from a severe mental impairment, and that the ALJ improperly applied the Medical-Vocational Guidelines (the "grids") in finding that there was a significant number of jobs in the national economy that he could perform. For the following reasons, the court finds these arguments unpersuasive.

**1.     The mental impairments**

An impairment is not severe if it is a slight abnormality that minimally affects

work ability regardless of age, education, and experience. 20 C.F.R. §§ 404.1520(c), 416.20(c); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Although the ALJ may not ignore evidence of serious impairments, it is the claimant's burden to prove severity. *See Higgs*, 880 F.2d at 862-63. In assessing whether a mental impairment is severe, the ALJ examines the degree to which the impairment interferes with the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 920a(c)(2). There are four broad areas that the ALJ considers in determining whether a claimant suffers from a severe mental impairment: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 920a(c)(3).

In determining that the claimant did not suffer from a severe mental impairment, the ALJ noted that the claimant was in good academic standing at the University of Kentucky; that he reads, watches television, and listens to the radio; that he takes care of his personal hygiene, and that he helps with household chores such as cooking and cleaning. The ALJ also found that the claimant has no difficulties in social functioning and no difficulty in maintaining concentration, persistence, or pace because of depression; there was no evidence suggesting that the claimant has failed to adapt to stressful circumstances or that he has had any episodes to deterioration or decomposition in work or work-like settings. Indeed, the claimant's medical records established that he had fair ability to adapt to


change. Nor did the claimant describe any irritability that would cause problems in working with co-workers or supervisors. Based on these facts, the ALJ found that, while the claimant has depression, the degree of functional limitations is minimal and does not affect his ability to work. The evidence in the record is sufficient to support this finding.

**2.   Application of the grids**

Once the claimant establishes an inability to perform past relevant work, the Commissioner has the burden of proving that a significant number of jobs exist in the national economy that the claimant can perform. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In meeting this burden, the Commissioner may rely on the grids. *Kirk v. Sec'y of Health & Human Serv.*, 667 F.2d 524, 527 (1981). However, the grid regulations cannot direct a finding of "not disabled" if significant non-exertional limitations exist, limiting performance of a wide range of work at the designated exertional level. *Id.* at 528-29.

In this case, the claimant argues that the ALJ failed to consider his mental impairments when applying the grids. The existence of a mental impairment does not preclude use of the grids unless the impairment significantly affects the claimant's ability to work. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Buress v. Sec'y of Health & Human Serv.*, 835 F.2d 139, 142-43 (6th Cir. 1987). As discussed earlier in this opinion, the ALJ found that the claimant's mental impairments did not limit the claimant's ability to work. Therefore, the application

of the grids was appropriate. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 8) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (DE 10) is **GRANTED**.

Signed on October 4, 2005

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY